IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| ERIC M. STROEVE,<br><br>        Plaintiff,<br><br>  vs.<br><br>LANCE YORITA,<br><br>        Defendant. | Case No. 19-cv-00191-DKW-KJM<br><br>**ORDER DENYING DEFENDANT YORITA'S MOTION FOR SUMMARY JUDGMENT** |

The sole issue before the Court on Defendant Lance Yorita's motion for summary judgment, Dkt. No. 26, is whether *Heck v. Humphrey*, 512 U.S. 477 (1994) and its progeny permit a Section 1983 plaintiff—who was previously convicted in state court for the crimes of resisting arrest and assault against a police officer—to proceed on an excessive force claim against the plaintiff's arresting officer based on allegations that the officer assaulted the plaintiff *after* he was in handcuffs and on his knees.

Because the alleged excessive force in this case falls outside the scope of Stroeve's prior criminal convictions, a judgment in favor of Plaintiff here will not "necessarily imply" or "demonstrate the invalidity" of those convictions. *Heck*, 512 U.S. at 487. Accordingly, Defendant Yorita's motion is DENIED.

# FACTUAL & PROCEDURAL BACKGROUND

On November 16, 2017, after a three-day trial in Hawaii state court,[1] a unanimous jury found Plaintiff Eric Stroeve guilty of resisting arrest. Haw. Rev. Stat. § 710-1026(1)(a).[2] *See* Dkt. No. 27-2 at 2, 11–15. Pursuant to a plea agreement, Stroeve pled no contest to the charge of second-degree assault against a police officer. *See id.* at 1, 23; *cf.* Haw. Rev. Stat. § 707-712.6(1).[3] Stroeve was sentenced to one year of imprisonment for each conviction. *See* Dkt. No. 27-2 at 1–2. The events underlying Stroeve's convictions occurred on June 13, 2017. *See* Dkt. No. 27-2 at 1.

## A. Stroeve's State Court Trial

At Stroeve's trial, Officer Yorita of the Maui Police Department (MPD)

---

[1] *See State v. Stroeve*, 2CPC-17-0000438 (Haw. 2017).
[2] Haw. Rev. Stat. § 710-1026(a) provides:

> (1) A person commits the offense of resisting arrest if the person intentionally prevents a law enforcement officer acting under color of the law enforcement officer's official authority from effecting an arrest by:
>
> > (a) Using or threatening to use physical force against the law enforcement officer or another; or
> > (b) Using any other means creating a substantial risk of causing bodily injury to the law enforcement officer or another.

[3] Haw. Rev. Stat. 707-712.6(1) provides:

> A person commits the offense of assault against a law enforcement officer in the second degree if the person recklessly causes bodily injury to a law enforcement officer who is engaged in the performance of duty.

testified that on June 13, 2017, at approximately 6:37 PM, he was on duty when he was dispatched to Pome, a business in Paia, Hawaii, to investigate a complaint about a male in the bathroom. Dkt. No. 27-3 at 6–7, 10. When Yorita arrived on scene, the owner of Pome informed Yorita that a Caucasian male in the bathroom had his hand inside the electrical panel. *Id.* at 13. The owner described this man as Caucasian, standing approximately six feet tall and weighing 150 pounds, and said that he had a shaved head and was wearing a black, hooded sweatshirt. *Id.*[4] The owner also reported that he last saw the man walking to a church across the street. *Id.* at 13–14.

Based on the owner's information, Officer Yorita walked to the church across the street from Pome. *Id.* at 15. On left side of the church, Officer Yorita saw a male sitting on a bench under a canopy. The man matched the description of the suspect and was later identified as Stroeve. *Id.* at 7, 14. Officer Yorita smelled the odor of marijuana as he approached Stroeve. *Id.* at 15. Once he was standing in front of Stroeve, Officer Yorita noticed Stroeve had a black backpack, a white piece of paper, and a small tin can, containing what appeared to be marijuana, and Stroeve was in the process of rolling a marijuana cigarette. *Id.* at 15.

After Officer Yorita told Stroeve about the complaint he received from across the street, Stroeve stated that "the CIA gave him poison weed." *Id.* at 16–17. Officer

---

[4]Officer Yorita weighs 280 pounds and his height is six feet, two inches. Dkt. No. 27-3 at 54.

Yorita ordered Stroeve to stop rolling the cigarette; but Stroeve licked the paper and continued rolling. *Id.* at 17. When Officer Yorita again instructed Stroeve to "put the joint down," Stroeve complied and then grabbed his hat and backpack and tried to stand up. Officer Yorita quickly put his hand on Stroeve's shoulder, forcing Stroeve to sit down, and advised Stroeve that he was under arrest for possession of marijuana. *Id.* at 17–18, 49–50.

With that, Stroeve "charged" or "lunged" at Officer Yorita and contacted Yorita's lower torso. *Id.* at 18. Officer Yorita grabbed ahold of Stroeve and again told him that he was under arrest, but Stroeve continued to struggle and push against Officer Yorita. *Id.* at 18–19. Officer Yorita and Stroeve eventually fell to the ground approximately fifteen feet from where the skirmish began. *Id.* at 19–21. Officer Yorita was able to straddle Stroeve, such that the two were face-to-face, with Stroeve lying on his back and Yorita on top. *Id.* at 21.

In Stroeve's right hand, Officer Yorita noticed his extendable, steel alloy police baton. *Id.* at 21, 23, 55. Stroeve swung the baton at Officer Yorita. The baton struck Yorita just above his eyebrow, but at the end of Stroeve's swing, Yorita caught Stroeve's arm with his hand. *See id.* at 22, 55–56, 58. Stroeve continued to swing the baton at Officer Yorita as he was straddling Stroeve, and the officer ordered him to drop the baton. *Id.* at 25–26. Finally, Officer Yorita warned that he would shoot Stroeve if he did not drop the baton. *Id.* at 26. When Stroeve failed to

comply, Officer Yorita reached for his firearm. Stroeve pushed his left hand against Yorita's right hand, preventing Yorita from drawing his firearm. *Id.* at 26, 60–61. Using his other hand, Officer Yorita unholstered his taser, and Stroeve rolled to his side. Officer Yorita tased Stroeve with two contact shots, one to Stroeve's upper left shoulder blade and the other to his lower back. Stroeve's body tensed after the taser finished cycling. *Id.* at 27–28, 67–70.

As Officer Yorita was still straddling Stroeve, Yorita attempted to holster his taser but it fell to the ground. *Id.* at 27–28. As the struggle continued, Stroeve and Yorita ended up on their sides facing one another. *Id.* at 28. Stroeve made a move to try and squeeze Officer Yorita's testicles but was only able to get ahold of Yorita's clothing. *Id.* at 28–29, 79–80. Officer Yorita regained his position on top of Stroeve and delivered multiple closed-fist strikes to Stroeve's thigh, ribs, groin, and face. *Id.* at 29–30, 75–76, 79, 96. A nearby bystander offered to call for help, and Officer Yorita asked the bystander to move the taser away from Stroeve. *Id.* at 30–31. The bystander also assisted Officer Yorita by holding Stroeve down until Yorita's partner arrived to help handcuff Stroeve. *Id.* at 32.

Both Stroeve and Officer Yorita sustained injuries. *Id.* at 32–38, 73–76. Officer Yorita testified on cross-examination that he had a red mark on his forehead, pain in his ribs, and bruised knuckles. *Id.* at 32–33. Stroeve's injuries included a black eye, a gash in his forehead, red marks on his back from the taser prongs, and

what looked like "road rash" on his back. *Id.* at 73, 76, 77–78. When asked whether the gash on Stroeve's forehead "was caused during th[e] encounter," Officer Yorita responded, "Ah, I would assume so. I don't know." *Id.* at 76.[5]

As relevant here, Stroeve testified at trial that the violence did not end once he was in handcuffs. According to Stroeve, Officer Yorita walked away, leaving Stroeve on his knees near a wall with his hands handcuffed behind his back. Dkt. No. 27-4 at 44. Stroeve then heard Officer Yorita approaching from behind and a "whipping sound . . . like a baton breaking wind," which struck Stroeve's forehead or top of his head and rendered Stroeve unconscious. *See id.* 44–45, 64. Stroeve testified that the blow left a gash on his forehead. *Id.* at 45. Before the trial concluded, the jurors were permitted to submit questions to Stroeve. One of the jurors asked, "when did the officer strike you over the head and were you handcuffed at the time?" *Id.* at 74. Stroeve answered, "I was on my knees. Probably 30 seconds after being handcuffed." *Id.* at 75.

B. **Procedural Background**

Stroeve filed a three-count complaint under 42 U.S.C. § 1983 on April 15, 2019, asserting claims against Officer Yorita, the prosecutor, and the court-appointed attorney that represented Stroeve. Dkt. No. 1. On May 9, 2019, the Court

---

[5]Counsel followed up on Officer Yorita's answer, and Yorita admitted that Stroeve did not have a gash on his forehead, nor did he notice anything similar, when he first encountered Stroeve that evening. Dkt. No. 27-3 at 76.

dismissed Stroeve's claims against the prosecutor and court-appointed counsel (Counts II and III). *See id.* at 4–6.[6] The only remaining claim is Count I against Officer Yorita in his individual capacity for use of excessive force in violation of the Fourth Amendment. Officer Yorita now moves for summary on Count I. Dkt. No. 26.[7]

## STANDARD OF REVIEW

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A *genuine* issue of *material* fact exists when, "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249; *see also Young v. UPS*, 135 S. Ct. 1338, 1355 (2015); *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## DISCUSSION

In Count I of the complaint, Stroeve alleges Officer Yorita struck him with "a baton, after [Stroeve] was in handcuffs, restrained, [and] on his knees, . . . rendering

---

[6]The Court also dismissed Stroeve's claim for lost property, valued at $170. Dkt. No. 4, at 7.
[7]On approximately January 16, 2020, Stroeve was released from prison. Dkt. No. 30 at 6; Dkt. No. 34.

him unconscious for 10 minutes," and that once Stroeve regained consciousness, Officer Yorita "tried to suffocate [Stroeve]." Dkt. No. 1 at 5. Officer Yorita contends Stroeve's claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and must be dismissed because a civil judgment in favor of Stroeve "would necessarily imply the invalidity" of Stroeve's state court convictions for resisting arrest and second-degree assault against a law enforcement officer. Dkt. No. 26-1 at 9–10. Stroeve, however, maintains that because the "alleged conduct by Yorita happened after the course of conduct on which Stroeve's convictions were based," his claim is not *Heck*-barred. Dkt. No. 30 at 3.[8] The Court agrees with Stroeve.

The Supreme Court in *Heck v. Humphrey* held that if "a judgment in favor of the plaintiff [in a Section 1983 suit] would necessarily imply the invalidity of his conviction or sentence . . ., the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. "But if the district court determines that the plaintiff's [Section 1983] action,

---

[8]Stroeve asserts two other arguments in support of his claim, neither of which has any merit. First, Stroeve asserts that Officer Yorita "presented falsified evidence at trial to diminish the possibility that Stroeve's injury was the result of an assault with a baton." Dkt. No. 30 at 3. But witnesses, including those who are police officers, enjoy absolute immunity from Section 1983 liability for their testimony in a judicial proceeding. *See, e.g.*, *Briscoe v. LaHue*, 460 U.S. 325, 325–26 (1983); *Paine v. City of Lompoc*, 265 F.3d 975, 980–81 (9th Cir. 2001); *Franklin v. Terr*, 201 F.3d 1098, 1101–02 (9th Cir. 2000). Second, Stroeve argues that the "trial court failed to provide any available witnesses and evidence to back up Stroeve's credible testimony." Dkt. No. 30 at 3. Nothing required the trial court to do so. Stroeve's court-appointed counsel had the obligation to marshal the evidence and witnesses favorable to Stroeve's case. But the Court has already held, Dkt. No. 4 at 5–6, that Stroeve *cannot* sue his court-appointed attorney under Section 1983 for the actions he took (or failed to take) in defending Stroeve in his criminal proceedings. *See, e.g.*, *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981).

even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* (emphasis in original; footnotes omitted).

Nothing in the record suggests Stroeve's convictions have "been reversed on direct appeal, expunged by executive order, . . . or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486–87. Therefore, "the sole dispositive question" in this case is whether Stroeve's Section 1983 claim that excessive force was used *after* he was in handcuffs, if successful, would "necessarily imply" or "demonstrate" the invalidity of either of his convictions under Haw. Rev. Stat. §§ 707-712.6(1) or 710-1026(1)(a). *See e.g.*, *Whitaker v. Garcetti*, 486 F.3d 572, 584 (9th Cir. 2007); *Hooper v. Cty. of San Diego*, 629 F.3d 1127, 1132 (9th Cir. 2011).

The validity of a conviction is impugned if the Section 1983 plaintiff "could prevail only by negating 'an element of the offense of which he has been convicted.'" *Cunningham v. Gates*, 312 F.3d 1148, 1154 (9th Cir. 2002) (quoting *Heck*, 512 U.S. at 487 n.6). For example, where a plaintiff's conviction for felony murder "required the jury to find that he intentionally provoked the deadly police response, and that he did not act in self-defense"—and the evidence established that "there was no break between [plaintiff]'s provocative act of firing on the police [during the commission of a robbery] and the police response that he claim[ed] was

excessive"—the plaintiff's excessive force claim was barred by *Heck* because a subsequent finding of excessive force on the part of the police would imply that plaintiff's conviction was invalid. *Cunningham*, 312 F.3d at 1154–55. Likewise, if a "jury necessarily had to decide that the officers did not use excessive force 'at the time of the arrest'" in order to convict the plaintiff of assault on a peace officer, then Section 1983 claims alleging that "the officers used excessive force *in effectuating his arrest* necessarily imply the invalidity of [the] underlying assault convictions" and thus, the claims are barred by *Heck*. *Curry v. Baca*, 371 F. App'x 733, 733–34 (9th Cir. 2010) (emphasis added); *see also Heck*, 512 U.S. at 487 n.6 (explaining that if a "state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest," a subsequent unreasonable seizure claim cannot lie).

By contrast, "an allegation of excessive force by a police officer would not be barred by *Heck* if it were distinct temporally or spatially from the factual basis for the person's conviction." *Beets v. County of L.A.*, 669 F.3d 1038, 1042 (9th Cir. 2012) (citing *Smith v. City of Hemet*, 394 F.3d 689, 699 (9th Cir. 2005) (*en banc*)). The Ninth Circuit has applied this principle on numerous occasions. In *Beets*, the excessive force claim was *Heck*-barred because the evidence presented in the state criminal proceedings showed that there was "no break between [plaintiff]'s assault with the pickup truck and the police response." *Beets*, 669 F.3d at 1044–45; *see also*

*Cunningham*, 312 F.3d at 1154–55. On the other hand, in *Smithart v. Towery*, plaintiff's excessive force claim was not barred by *Heck* because, although plaintiff entered a plea for assaulting his arresting officers with a deadly weapon (plaintiff's truck), the alleged excessive force took place "after [plaintiff] exited his vehicle." *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (*per curiam*). And in *Sanford v. Motts*, the plaintiff had previously plead nolo contendere to resisting or obstructing a police officer, and yet the plaintiff was permitted to pursue an excessive force claim because a jury could find that the officer's "punch was delivered after [plaintiff] was arrested." *See Sanford v. Motts*, 258 F.3d 1117, 1119–20 (9th Cir. 2001). Later, in *Smith v. City of Hemet*, the excessive force claim was not *Heck*-barred because, as the *en banc* court reasoned, if the excessive force "occurred *before* or *after* [plaintiff] committed the acts to which he pled [guilty to resisting arrest]," this "would not invalidate his conviction." *See* 394 F.3d 689, 697–99; *see also Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1046 (9th Cir. 2018) (holding excessive force claim is not *Heck*-barred by virtue of pleading no contest to exhibiting a deadly weapon in a threatening manner because conviction could have been based on conduct occurring before police arrived). Similarly, the fact that a plaintiff pleads guilty to resisting arrest "does not bar a § 1983 claim for excessive force under *Heck* when the conviction and the § 1983 claim are based on different actions during 'one

continuous transaction.'" *Hooper v. Cty. of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011) (citation omitted).

Stroeve's excessive force claim is consistent with the cases where such a claim has been permitted to proceed. Stroeve alleges that Yorita employed excessive force "after" Stroeve was on his knees and in handcuffs. Dkt. No. 1 at 5. The Section 1983 claim is not based on Yorita's pre-arrest conduct. In fact, Stroeve testified at trial that after he was on his knees and in handcuffs, Officer Yorita walked away and then returned and struck him with the baton approximately "30 seconds after being handcuffed." Dkt. No. 27-4 at 75. Because Stroeve alleges excessive force that is "distinct temporally or spatially from the factual basis for [his] conviction[s]," *see, e.g.*, *Beets*, 669 F.3d at 1042 (citing *Smith*, 394 F.3d at 699), Stroeve's two convictions would not be called into question if Stroeve were to prevail on his excessive force claim.

First, Stroeve's conviction for second-degree assault against a police officer does not present an obstacle under *Heck*. Although nothing in the record declares what the factual basis was for Stroeve's plea of no contest, the evidence at Stroeve's criminal trial suggests Stroeve's plea was based on his conduct during the violent struggle that occurred *before* the alleged excessive force. *See Smithart*, 79 F.3d at 952; *Smith*, 394 F.3d at 697–99; *Reese*, 888 F.3d at 1046; *Sanford*, 258 F.3d at 1119–20. There is, in fact, no evidence that Stroeve engaged in any violence after the point

he was handcuffed and after Yorita walked away. As such, a judgment here in favor of Stroeve would not invalidate his assault conviction.

Second, Stroeve's conviction for resisting arrest also would not bar his excessive force claim under *Heck.* To find Stroeve guilty of resisting arrest, the jury necessarily decided that the prosecution had proven the following four elements:

>   1.   That on or about [June 13, 2017] . . . the Defendant . . . used physical force or threatened to use physical force against Officer Lance Yorita, a law enforcement officer; and
>
>   2.   That the Defendant's use or threatened use of physical force against Officer Lance Yorita prevented him from effecting an arrest;
>
>   3.   That Officer Lance Yorita was acting under color of his official authority; and
>
>   4.   That the Defendant did so intentionally.

Dkt. No. 27-5 at 34. Therefore, contrary to Officer Yorita's contention, the jury did not need "to find [his] testimony credible as to how [Stroeve] received his injuries to his face, head, and body." Dkt. No. 26-1 at 10.[9] Moreover, despite the fact that the jury was instructed that the "use of force is not justifiable to resist an arrest" unless "the officer threatens to use or uses unlawful force," *see* Dkt. No. 27-5 at 32, it does not follow that the jury found that Officer Yorita *never* used excessive force

---

[9]If the rule was as Officer Yorita urges, the officer who takes an arrestee to a dark alley for a beating before checking in at booking could effectively obtain immunity from Section 1983 liability simply by testifying in the criminal trial that the injuries the defendant sustained occurred during a struggle to handcuff the defendant. *Heck* does not command such manifest absurdity.

during the June 13, 2017 incident. To convict Stroeve of resisting arrest, the jury necessarily had to decide only that Officer Yorita did not use excessive force "at the time of the arrest." *See Curry*, 371 F. App'x at 733–34. But Stroeve is not alleging that excessive force was used in "effecting [the] arrest," which would undermine the jury's finding as to the second element of the offense. *See* Dkt. No. 27-5 at 34. Rather, Stroeve alleges that the excessive force occurred "after" he was in handcuffs.

Viewing the record in the light most favorable to Stroeve, the pivotal fact is the marked temporal "break" between when Stroeve actually resisted arrest and was handcuffed and when Officer Yorita allegedly hit Stroeve from behind with a baton. That thirty-second "break"—when Stroeve was on his knees in handcuffs—clearly distinguishes this case from *Beets*, 669 F.3d at 1044–45, and *Cunningham*, 312 F.3d at 1154–55. That is, here the alleged police conduct falls outside "the temporal scope of [the] crime." *Cunningham*, 312 F.3d at 1154; *see also Smith*, 394 F.3d at 696 ("[E]xcessive force used *after* a defendant has been arrested may properly be the subject of a § 1983 action notwithstanding the defendant's conviction on a charge of resisting an arrest that was itself lawfully conducted."). If Stroeve can prove that he was struck after he was arrested, when he was complacent and in custody, *Heck* would not bar his Section 1983 claim.

In sum, a finding in Stroeve's § 1983 case that Officer Yorita used excessive force *after* Stroeve was in handcuffs would not negate the lawfulness of Officer

Yorita's preceding conduct to effectuate Stroeve's arrest or negate the unlawfulness of Stroeve's prior attempt to resist the arrest and assault Officer Yorita. Because a judgment in favor of Stroeve would not "necessarily imply" or "demonstrate" the invalidity of either of his prior convictions, Officer Yorita is not entitled to summary judgment under *Heck v. Humphrey*.

## CONCLUSION

For all these reasons, Defendant's Motion for Summary Judgment, Dkt. No. 26, is DENIED.

IT IS SO ORDERED.

DATED: February 10, 2020 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*Eric M. Stroeve v. Lance Yorita*; Civil No. 19-00191 DKW-KJM; **ORDER DENYING DEFENDANT YORITA'S MOTION FOR SUMMARY JUDGMENT**