IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ERIC M. STROEVE,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>LANCE YORITA,<br><br>　　　　Defendant. | Case No. 19-cv-00191-DKW-KJM<br><br>**ORDER (1) GRANTING MOTION FOR SUMMARY JUDGMENT, AND (2) DIRECTING ENTRY OF FINAL JUDGMENT IN FAVOR OF DEFENDANTS** |

Now before the Court is the third motion for summary judgment filed, collectively, by the parties in this action. Dkt. No. 52. Unlike the prior two motions, this time, the motion for summary judgment is unopposed. More importantly, in support of the motion, Defendant Lance Yorita has submitted evidence in support of his version of events. Because that version is unopposed and reflects that Yorita did not use excessive force against Plaintiff Eric Stroeve, Yorita's motion for summary judgment is granted. In addition, because all other defendants have previously been dismissed, the Clerk is directed to enter final judgment in their favor.

**STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." In particular, the movant's "initial responsibility" is to inform the district court of the basis for its motion and to identify those parts of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party is then entitled to judgment as a matter of law if the non-moving party fails to make a sufficient showing on an essential element of a claim in the case on which the non-moving party has the burden of proof. *Id*. In assessing a motion for summary judgment, all facts are construed in the light most favorable to the non-moving party. *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

## **RELEVANT PROCEDURAL BACKGROUND**

The instant motion for summary judgment was filed on June 23, 2020. Dkt. No. 52. On the same day, the Court set the motion on a non-hearing briefing schedule pursuant to Local Rules 7.1(c) and 7.2. Dkt. No. 55. This meant that Plaintiff had until July 7, 2020 to file a response. Local Rule 7.2. However, the Entering Order that was sent to Stroeve to inform him of the briefing schedule was returned as undeliverable. Dkt. No. 56. Nonetheless, on June 30, 2020, Stroeve filed a notice of change of address. Dkt. No. 58. As a result, on July 18, 2020, the Court extended the time to file a response to the motion for summary judgment

until July 27, 2020. Dkt. No. 61. In addition, Defendant re-served the motion for summary judgment. Dkt. No. 59. As of the date of this Order, no response or request for extension of time has been filed by Stroeve.[1]

## FACTUAL BACKGROUND

The evidence submitted in connection with the instant motion for summary judgment reflects the following.

On June 13, 2017, Defendant Yorita was a police officer with the Maui Police Department (MPD). Decl. of Lance Yorita at ¶¶ 2-3, Dkt. No. 53-1. At approximately 6:37 p.m. on that date, Yorita was dispatched to a business called Pome in Paia, Maui. *Id*. at ¶ 3. Yorita made contact with the complainant, Walter Hutton, who reportedly observed a Caucasian male standing inside a bathroom with his right hand inside an electrical panel. *Id*. After Hutton provided a description of the Caucasian male, Yorita walked over to a church directly across the street from Pome. *Id*. at ¶ 4. Yorita observed a male sitting on a bench matching the description of the Caucasian male provided by Hutton. The male was later identified as Plaintiff Stroeve. *Id*. As Yorita approached Stroeve, Yorita detected the smell of marijuana from about seven feet away and, then, after

---

[1]Stroeve also did not appear at a settlement conference with the assigned Magistrate Judge on July 15, 2020. Dkt. No. 62.

getting closer, Yorita saw Stroeve roll what looked like a marijuana cigarette. *Id.* at ¶ 5. Yorita informed Stroeve as to the reason he was contacting him and instructed Stroeve to put down the cigarette. *Id.* at ¶ 6. Stroeve refused to comply, grabbed his hat and backpack, and tried to stand up. *Id.* at ¶¶ 6-7. In response, Yorita attempted to place Stroeve under arrest while informing him that his arrest was for possessing suspected marijuana. *Id.* at ¶ 7. A struggle ensued with both Yorita and Stroeve ending up on the ground. *Id.* at ¶ 8. During the struggle, Stroeve obtained possession of Yorita's metal baton, swinging it at and striking the officer in the forehead. *Id.* Both Yorita and Stroeve sustained injuries during the struggle. *Id.* at ¶ 9. Eventually, with the help of others, Stroeve was handcuffed and arrested. *Id.* After Stroeve was placed in handcuffs, there was no further physical violence between Stroeve and Yorita. *Id.* at ¶ 10. Yorita then drove himself to the hospital emergency room to have his injuries treated. *Id.* at ¶ 11.

## **DISCUSSION**

The sole remaining claim in this case is one of excessive force against Yorita for the events on June 13, 2017 subsequent to Stroeve being placed in handcuffs. *See* Dkt. No. 4 at 10. Claims alleging the use of excessive force during an arrest are "analyzed under the Fourth Amendment's 'objective reasonableness

standard.'" *Saucier v. Katz*, 533 U.S. 194, 204 (2001) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)). The "reasonableness" of an officer's actions "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397. This requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id*. "[T]he most important factor under *Graham* is whether the suspect posed an immediate threat to the safety of the officers or others." *C.V. v. City of Anaheim*, 823 F.3d 1252, 1255 (9th Cir. 2016) (internal quotation marks omitted).

In light of the evidence before the Court, however favorably it may be construed in favor of Stroeve, Yorita did not engage in excessive force in arresting Stroeve (either during or after the arrest) on June 13, 2017. Instead, construing the evidence in the light most favorable to Stroeve, the evidence shows that (1) after Yorita attempted to arrest Stroeve, a struggle ensued, (2) during the struggle,

Stroeve obtained possession of Yorita's metal baton and then hit Yorita on the forehead with it, (3) both Yorita and Stroeve suffered injuries during the struggle, and (4) no further physical violence occurred after Stroeve was placed in handcuffs.  Given that the injuries Stroeve suffered and the force used to inflict them are unidentified in the evidence beyond the natural force produced by a struggle, any force Yorita used cannot have been objectively unreasonable under the circumstances established here.  This is especially so in light of the evidence that Yorita was struck on the forehead by Stroeve during their struggle.  *See C.V.*, 823 F.3d at 1255 (stating that the most important factor is the threat to the safety of an officer or others).  Further, because, in the Complaint, this claim appears to have been premised upon acts occurring *after* Stroeve's arrest (rather than during the same), the Court notes that the only evidence in the record is that no forceful acts occurred after Stroeve's arrest.[2]  Therefore, the Court cannot find that force was used in that respect, let alone excessive force.

---

[2] Although it is not the Court's responsibility to comb the entire record for evidence in support of Plaintiff's claim, the Court notes that, even after reviewing the first two motions for summary judgment in this case, other than a picture of himself in a hospital bed, Stroeve has not submitted *any evidence* either in opposition to Defendant's first motion for summary judgment or in support of his own motion for summary judgment.  *See generally* Dkt. Nos. 30, 30-1, 44.

With that being the case, and with Defendant having met his "initial responsibility" on summary judgment, *see Celotex*, 477 U.S. at 323, without any opposition, the Court GRANTS the motion for summary judgment.[3]

## CONCLUSION

For the reasons set forth herein, the motion for summary judgment, Dkt. No. 52, is GRANTED.  The Clerk is instructed to enter final judgment in favor of all defendants pursuant to this Order and Dkt. No. 4.

IT IS SO ORDERED.

DATED: August 10, 2020 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Eric M. Stroeve v. Lance Yorita*; Civil No. 19-00191 DKW-KJM; **ORDER (1) GRANTING MOTION FOR SUMMARY JUDGMENT, AND (2) DIRECTING ENTRY OF FINAL JUDGMENT IN FAVOR OF DEFENDANTS**

---

[3]The Court notes that Defendant's evidence is further supported by Plaintiff's failure to respond to any of Defendant's requests for admission (Dkt. No. 53-3), which, as a result, are thus deemed admitted.  *See* Fed.R.Civ.P. 36(a)(3).